The next argument is in Drake v. Agency for International Development, Appeal 3048 from 2008. Mr. Woodfield, good morning. Please proceed. Thank you, your honor. May it please the court. Nicholas Woodfield for Petitioner Matthew Drake. Let me at the outset mention I've got a little bit of a bug, so if I'm hard to understand, please let me know. Mr. Drake is appealing the October 18, 2007 final order of the MSPB in his 5 U.S.C. 2302 B.A. appeal. There are four issues on appeal. Whether the MSPB erred when it denied Mr. Drake's petition for review, affirming the administrative judge's previous decision that 3FAM4542 is not a law, rule or regulation. The respondent has conceded that point. Mr. Drake also sets forth as issues whether the MSPB erred when it denied Mr. Drake's petition for review, affirming the administrative judge's previous decision that Mr. Drake's report was of a trivial nature. I would submit that that is under the de novo standard because the facts in that claim are not in dispute. Why do you care whether the full board reviewed certain issues or not? I don't think that your concern is to show errors in the operative final decision of the administrative judge. Well, the administrative judge made the error. I believe that the error was in the initial decision that was adopted as a final order. They said that there was no error there. Yes, the appeal is of the initial order, but that became the final order of the MSPB upon adoption on appeal is my understanding. Maybe I misunderstood you, but my sense of this case is all we have to worry about is the rulings of the administrative judge. No ruling of the full board has any importance now. Yes, yes. I mean the opinion itself, the appellate opinion just basically says there's no error. What we are appealing is the underlying opinion, which is the substance. Where is the error in that underlying opinion? There are four. One is that the AJ decided that 3FAM4542 is not a law rule of regulation within 5 USC. Well, that's conceived, so we don't need to spend time on that. Also, the AJ made the determination that Mr. Drake's report under 5 USC 2302B8 was of a trivial nature. Again, that is an issue that is against the great weight of the evidence, but more importantly, the evidence is uncontested. Therefore, I believe that the review of that issue would be de novo because the facts are uncontested. Counsel, I thought I understood your argument. You're talking a lot now, but you're not saying what I thought I understood your argument was. I thought I understood it to be that trivial is something that applies only to 2i in 2302B8A2, which pertains to gross mismanagement, a gross waste of funds, and abuse of discretion or a substantial and specific danger to the public health or safety. I thought that I understood your argument in your briefs to be that to the extent that our previous cases of Herman, for example, had talked about trivial or de minimis, it was with respect to the 2i, and 1i doesn't have the word substantial or gross or any of those other things that would create the triviality. Is that part of what I understood your argument to be? Yes, I don't believe that with regard to the violation of a law, rule, or regulation, the trivial nature applies at all. However, in the event... Well, in Langer, we said it did, but not exactly in the way that it seems that the government is arguing. In this case, in Langer, it seems that we said that the action by the agency was so trivial it didn't amount to a violation of law, rule, or regulation. And that that, too, is something you're distinguishing from this case because, again, no one was sort of belittling one of the violations of law, rule, or regulation, that any violation of law, rule, or regulation would be enough. Is that right? Yes, but more importantly, in Langer, what you had was you had a situation where this court held at... Langer's the pink envelope case, right? Yes. Actually, Langer is the... Yes, Langer's the pink envelope case. Right. Just keep them straight. At page 1267, this court said, We agree with the Board that Langer failed to make protected disclosures under the WPA with respect to Disclosures 3, 4, and 5. The WPA was enacted to protect employees who report genuine violations of law, not to encourage employees to report minor or inadvertent miscues... As miscues as opposed to a violation. Yes, and what happened here was you had, in Langer, you had the agency trying to adhere to law and you had the person saying, Look, you've stepped aside. Your feet have touched the line and gotten dusty. In this situation, Mr. Drake has said, There is an intentional and willful violation of a law. There's a difference here in that there's an intentional standard. There's an intentional transgression of a rule that says you may not become intoxicated. He said these people are becoming intoxicated. The purpose or the distinction here is a willfulness and intent to transgress the law that specifically prohibits the conduct in question. That was not the case in Langer. It was not the case in Herman, where in Herman's case, he said that by not complying fully with the law, by having a contingency plan that the facility thought would work in lieu of a fixed suicide room, the board said, or the court said, we agree with the board, that Dr. Herman's memorandum discussing the absence of a formal agreement between the hospital and prison camp did not disclose a substantial and specific danger to public safety, and that according to legislative intent warrants protection under the WPA. The board noted that the prison camp does have a designated suicide prevention room, which is located at the base hospital, and that the room was accessible to the prison pursuant to an informal agreement with the base hospital. The board further noted that Dr. Herman did not challenge the adequacy of the arrangements of the room itself, or take issue with the substance of the agreement at the hospital. He simply took issue with the informal nature of the agreement. That's Herman at 1379. Now, again, we've got a situation where it's not someone saying, you know, look, you're not complying exactly with the rule. This is saying you are in a willful transgression exactly contrary to the purposes. And you have to win all three of your first three arguments to get a reversal here, right? Because the A.J. Below made three independent decisions as to why this did not amount to a protected disclosure. So why don't you move on to number three? I think I appreciate your argument on number one and two. So you better tell us three because you've got to get all three of them. Your Honor, I think that number three is perhaps the most egregious error by the A.J. The A.J. held that Mr. Drake did not have a reasonable belief that the parties or the individuals of the party had violated 3FAM4542. Now, what's key to note here is that the judge did not make a credibility finding that these individuals, that the events did not occur as Mr. Drake had reported them, that these people were not drinking, that these people were not doing shots and were not yelling things like woo-hoo and sweating and looking glazed over. What the judge did was add a new level of difficulty saying, you did not tell me exactly how much they drink and you did not produce proof of intoxication. Under that threshold, she said... That's a drunk driving test. It's a reasonableness test. Yes, Your Honor. And while I'm not a criminal practitioner, under that standard, if you did not have the blood alcohol content, you couldn't prove drunken driving based on the fact that someone's staggering around. If you had someone who couldn't walk a straight line... Isn't it irrelevant whether they were in fact intoxicated? Whatever definition we wanted to give to that in terms of blood alcohol level or other measure. The only question is whether the observer, the alleged whistleblower, Mr. Drake in this case, had a reasonable belief that the attendees of the farewell party had become intoxicated. Absolutely, Your Honor. Mr. Drake... That's a much lower standard. Yes, Your Honor. Mr. Drake could have been completely wrong as long as a reasonable person with the same knowledge that he had at the time could have come to that conclusion. However, the judge said, not that the standard wasn't that a reasonable person with the same knowledge that he had could have come to that conclusion. The judge said he did not manage to exclude other reasons in our exact finding. The judge said that, and I believe it said... That he applied the wrong standard. Yes, Your Honor. He said the disinterested observer had to conclude based on what Mr. Drake disclosed that the people were drunk and the standard really is. Could a disinterested observer, if they had been standing in Drake's shoes, have reasonably concluded that the people were drunk? Yes. Okay. And so she said that Judge Vogel said that he did not manage to exclude the other potential outcomes that someone else could have come to and therefore he did not meet his standard. And that is an infinitely higher standard than might be applied. But she really varied significantly, you would say, from the standard announced in Le Chant. She permissibly changed the standard. Absolutely, Your Honor. At JA, at the Joint Appendix 12G, the court said, in summary, I find that the appellant has not proven by preponderant evidence that he engaged in whistleblowing activity because he has not shown that 4542 was an agency law rule or regulation because his disclosure that it violated was trivial and because he has not shown that a disinterested person could reasonably conclude that the information he disclosed evidenced a violation. Now she made that finding based on her conclusion that he did not exclude the other potential outcomes. Causation. Yes. For the observed behavior. Yes, because at 12F she said She seemed to think that it might just be conviviality of people attending a party together, not induced by alcohol. Exactly, because her summary was based on her own statement at 12F where she stated, exactly as I'm reading here, quote, because the appellant provided no testimony that would show that the behaviors he observed were caused by alcohol intoxication and not by normal party behavior, I find that a disinterested observer could not reasonably conclude that his disclosure evidenced a violation of three FAM. Wasn't there some testimony that several employees at the party were normally quite reserved and quiet but were observed acting in what I'll call a boisterous manner after having ingested some drinks? Yes, Your Honor. At JA 419-3420, at 419 line 18, the question was posed, After speaking to Mr. Ross, you met with the assistant of, forgive me, it said, JA 346 line 9. The question was, Go ahead, Mr. Drake. Would you like me to restate the question? Answer, No. At the parties, I saw the deputy chief of mission, the mission director for USAID, the regional legal advisor for USAID, the regional inspector general for USAID, and other employees consuming a lot of alcohol in a short amount of time. Question. Okay. What physical manifestations, if any, did you witness them exhibiting following the consumption of a lot of alcohol in a short period of time? Answer. I saw people, the first instance I saw, Nancy Lawton, the regional inspector general, and Steve Allen, the regional legal counsel, doing shots of hard liquor. They were very euphoric. They were very touchy-feely. They had their arms around each other, laughing loudly, telling jokes. Were you acquainted with Ms. Lawton and Mr. Allen prior to these two parties? Answer, Yes. Question. And how were you acquainted to them, or with them? Answer. I saw them on a routine basis. Let me interrupt to just ask you this question. Are you saying that her analysis was tainted by imposing a wrong legal standard, legal issue, de novo review? Or are you saying that she grossly misjudged the evidence, substantial evidence, deferential kind of review, or both? Your Honor, I believe this is a de novo standard because the evidence is not controverted. The agency never put on any evidence that these people were not engaging in this behavior. Moreover, she accepted this testimony as adequate, but she said this did not reach the standard, which is that he could not disprove. So you think substantial evidence is not the issue, that there is a legal error here based on uncontested facts? I believe that it is de novo, but even arguendo, if it was not de novo, the testimony meets the standard. You've also argued that she didn't review the complete record, but that she focused on a few incidents and then found it was insufficient. Yes, but she even quoted as the basis for her opinion that these people were acting in this manner, and then she said he didn't meet the wrong legal standard. Let me ask you a question that really goes outside the record. Has this dispute been the subject of any sort of negotiation or mediation or attempts to resolve this? This is a continuation of a saga that started in Georgia, the Republic of Georgia, not Georgia where Atlanta is, in which some observer might think that the agency grossly overreacted, both to Mr. Drake's own drinking and now to the drinking at the farewell parties by other employees. Has there been any attempt to work this out so we don't spend more time, more money, more court time, more agony over what seems like a fairly minor incident? Your Honor, Mr. Drake is now in Egypt and it is my understanding that there is no more USAID outpost in Budapest. However, Mr. Drake, also as a government service, as an OIG official, has expended several years of his income in defending himself from this. We have had the discussion over what he has had to invest into this and counsel for the respondent has inquired that a number was proffered and no response was received. You proffered a number and the government didn't respond? To the best of my recollection I believe a number exactly was given but it may have been a ballpark number and no response was received. What's the ballpark? At this point I think it's about $92,000 in fees. Attorney's fees? Yes. Other expenses as well? And there are other expenses I believe in the neighborhood off the top of my head of about $13,000 of the cost that he had to cover when he was kicked out of the country and had to fly his family around and then live in a hotel because he was not allowed to return to his own residence. When he was kicked off of the USAID mission and he was not allowed back into the embassy, he had to have his family moved out. They moved him out. They wouldn't allow him back in the mission after this. I understand that but none of those costs were covered by aid? He had to pay at least $12,000 himself. Alright. Let's hear from the government. We'll give you back some rebuttal time. You did pretty well for somebody who's ill. Mr. Hughes. Good morning. Welcome back to the court. Thank you, Your Honor. Good morning. Hope it's good to see you. Experience helps? May it please the court. First of all, the facts in this case are not undisputed. They are highly disputed about whether the people involved with these parties violated the agency's policy against intoxication. But isn't the issue whether a reasonable observer, standing in Mr. Drake's shoes at the two parties, would have had sound reason to conclude that the party attendees had gotten drunk? Yes, Your Honor. That's precisely the issue. And the administrative judge in this case made a factual finding that no reasonable observer, based upon the facts known to Mr. Drake or to a reasonable observer, could have concluded. That's a factual finding. It doesn't look bulletproof to me. As best I can sense the reality here, a reasonable observer could very easily have concluded that there was substantial intoxication on the part of several people at the party who were aid or embassy employees. Well, first, we would dispute that there's substantial evidence of substantial intoxication. But that's not the issue here. The issue is not whether a reasonable person could conclude that there was intoxication against the policy. The question is whether the administrative judge's factual finding that no reasonable person could conclude this is supported by any substantial evidence in the record. This court is not reviewing this question in de novo. This court is reviewing the administrative judge's factual finding to determine whether there is evidence in the record to support that factual finding. And there is ample. Counsel, it seems to me that if we're reviewing whether she correctly applied the standard we articulated in La Chance, that, in fact, is a de novo review. And that's at least what I understand principally their argument to be on appeal, is that she deviated from the standard we announced in La Chance by instead focusing on whether or not basically Mr. Drake could prove they, in fact, were intoxicated and, therefore, deviated from the much less strict standard that we announced. You agree that would be de novo. If that's the issue we're focusing on, that is a subject of de novo review, right? That's correct, Your Honor. If the issue is whether the administrative judge applied the proper reasonable person standard that was announced in La Chance v. White, that would be a legal issue. But the administrative judge did apply the proper legal standard here. She cited La Chance v. White. She made a factual finding that says, I do not find that a disinterested observer with knowledge of these facts reasonably conclude that employees were intoxicated. That's the proper standard, Your Honor. But when you look for the reasoning that got her to that bottom line conclusion, it looks a little shaky. There was no proof of blood alcohol levels. There was no proof of exactly how many drinks any particular person had ingested, although I thought there was testimony that several people admitted that it was two or more. So I'm not very confident. I don't share your confidence that this was purely a factual finding based on carefully assessing conflicting evidence. It looked to me like she demanded forms of proof that go far beyond what's contemplated by La Chance. What am I wrong? Well, we would disrespectfully disagree, Your Honor. That is her discussion of Mr. Drake's proffered testimony and her reasons for rejecting it. Well, but she says right before the conclusion you keep reading that the laughing, talking, a lot of the joking, blah, blah, blah, taking one's jacket off, are all behaviors that an intoxicated individual might engage in. But there are also behaviors that an enthusiastic party goer who is not intoxicated might engage in. So she says it could be either way. And I'm going to decline to go with Mr. Drake's interpretation because I find my conclusion otherwise. But she sets it up by saying it could be either. The activities could be either. And why doesn't that fall right within the La Chance standard? I think what she's saying is those activities are perfectly consistent with people that are intoxicated and it's also perfectly consistent with people that aren't intoxicated. Those activities are not enough to demonstrate intoxication that a reasonable person can base it on. Even for an observer who's just seen people doing shots with hard liquor? I mean if you just saw them at a party and you didn't see any drinking and you saw them with their arms around each other laughing or joking and all that kind of thing, maybe. But if the immediate prelude is in a short period of time, a lot of alcohol was consumed, several people were doing shots with hard liquor, that sets a very different context, I would think. Well, that's a distortion of the record, Your Honor. They were not doing shots of hard liquor. They were doing half-size shots of chocolate liqueur and that's noted in the IG's report. There's a significant difference between doing shots of hard liquor like tequila and a chocolate liqueur. It really depends on how many shots you do. I mean the math is simple. If it's half as strong but you have twice as many, you come out in the same place. Well, there's no evidence in the record anywhere that these people did more than one or two shots. The IG's report interviewed the people that were accused of being intoxicated and they all said that they consumed no more than one or two drinks. One or two shots. Now, one of these people, the subject of the testimony was a lady, and I have no idea of her actual weight. But I can tell you that one or two shots and, boy, you wouldn't want me deciding your cases. Yeah, I don't see why it isn't reasonable for him to conclude that those one or two shots are causing the behaviors that he's observing. I think it might have been reasonable. The administrative judge easily could have come to the other factual  But that's not the question. But it's not for her to decide which one actually is the cause of the behavior. It's only for her to decide whether it was reasonable for him to conclude that this could be the cause of the behavior. No, Your Honor. I disagree with that characterization in the standard. It doesn't have anything to do with whether his belief was reasonable. It's whether an objective disinterested observer could believe that it was reasonable. A disinterested observer with the knowledge of the facts known by Drake could have reasonably, reasonably could conclude the employees were intoxicated. That's correct, Your Honor. And in this case, she concluded that based upon looking at all the evidence of record, and the photos here are important, too, Your Honor. How did the photos help you? There are an awful lot of bottles on the table. And they are all full. Your Honor, if I could invite the court's attention to the photos, there are an awful lot of bottles on the table. And I apologize. The accuracy of the photos isn't great because it's a bad photocopy. A bunch of those bottles are water bottles and tonic bottles and stuff. At best, there's about two or three bottles of wine, one of which is closed. There's two or three bottles of empty beer. That is not, standing alone, a look at a table with some bottles of alcohol isn't enough to show that anybody violated this policy. Well, standing alone isn't the question. The question is when you chain together all these different observations, including what the photos show, what Drake testified to, what was admitted by some of the partygoers themselves about one or two drinks or whatever they said. I'm not trying to put words in their mouth. When you put it all together, pretty hard for me to see that it would be unreasonable for an objective observer to think they had gotten drunk. Yes, Your Honor. Maybe not terribly drunk. Maybe not falling down drunk, but drunk enough to be, quote, intoxicated within the meaning of the rule. Well, first of all, Your Honor, again, it's not a question of what this court would believe on a de novo standard or what a reasonable person would believe. Fine. It's the administrative judge's factual conclusion that no reasonable person. And if I can point to sufficient evidence in the record that no reasonable would support that finding, then the government prevails. And there is evidence in the record. There is the IG's own report into this investigation where the other people interviewed that were at this party testified to the IG that no people were intoxicated at this party. Mr. Drake, in his email, reporting this allegation. That isn't the question. The question isn't whether they were actually intoxicated. The question is whether an observer could rationally have thought they were intoxicated. That's the question. An administrative judge found to the contrary. And as long as there's evidence supporting that conclusion, which there is, then the government prevails. Let me further add. Well, what's the evidence? The assertion of some witnesses that the people weren't intoxicated? The assertion of every other witness that attended this party was that they weren't intoxicated. In fact, Mr. Drake, in his email. With what definition in the questioning of what intoxicated me? Well, the definition that Mr. Drake conceded to in his cross-examination at trial was that intoxication involved a degree of drinking that went to a loss of control. And there's no evidence anywhere in the record that any of these people lost control in any sense that would demonstrate intoxication. And again, beyond that, the IG's report, Mr. Drake's own testimony, where if the court examines his testimony in cross-examination, he goes through each one. Why do we care about the IG's report if we have trial-type testimony in front of the administrative judge? Because any kind of evidence, including that report, can be substantial evidence. The court isn't confined and the government isn't confined to trial testimony. Well, I understand that. But if you have the people who were at the party actually testifying in front of the AJ, why would you then rely on what some of those same people told an interviewer in a non-verbatim record? You've got a verbatim record. You've got them under oath. You've got the benefits, whatever they are, of cross-examination. Why isn't that the core of the reliable evidence here rather than some secondhand summary by an investigator of non-verbatim interviews? Because not all the people at the party testified, Your Honor. Well, whose fault is that? You know, if the government could have had a stronger case by bringing forward more witnesses and they chose not to do so, it's a little late for the government to complain about that here. I'm not complaining about the fact that they didn't testify. It's not our obligation to put on that kind of testimony if there's other evidence adequate in the record to support that conclusion. Well, that's a judgment call, and you made the judgment call. But whether it was good or bad or indifferent seems to me at this point you have to live with it. You can't complain that not everybody testified. I'm not complaining, Your Honor, but this court cannot disregard the IG's report just because the government didn't put on live testimony. Maybe live testimony would have been preferable, but there were probably complicating factors involving the fact that these people were in Hungary and not in the United States. That document was admissible evidence. The administrative judge admitted into the record, and this court is bound to look at that as a piece of substantial evidence. It can't disregard it just because it may have been preferable. I wasn't suggesting it's inadmissible, assuming it was admitted, or that it's entitled to no weight. I was suggesting it may be entitled to less weight on the grounds that it's secondhand, not live testimony. Well, there's no legal support for that, Your Honor, I think, in an MSPB proceeding. MSPB proceedings don't proceed under the normal rules of evidence, and that report, which obviously contains hearsay, is still admissible and reliable. It can be used by the MSPB. This court has noted that hearsay is available to be used in MSPB proceedings. I agree it's admissible. I don't have any question that it's admissible. But substantial evidence doesn't have tiers of importance. It's either there's substantial evidence or not. There's no tier of importance that live testimony is necessarily more substantial than a document that was prepared by the IG's office. So yes, Your Honor, I am relying on that. But I'm also relying on Mr. Drake's own testimony, where when he goes through the pictures that he says support, his conclusion that these people were intoxicated can't identify a single incident of anything showing intoxication. His testimony read in its context shows this to be what the administrative judge concluded. This is a normal, very short one-and-a-half-hour party, government party, on a Friday afternoon. No, if the administrative judge had said in the opinion, I find Mr. Drake's account of drunkenness not credible. He said a lot of alcohol was consumed. I find a lot of alcohol was not consumed. He said people were acting in this and that and the other way. I find they weren't. That's a huge exaggeration. I just don't believe him. I didn't get that sense from the fact finding. The impression I got was he found everybody's version pretty much credible. Well, I disagree, Your Honor. I think she rejected Mr. Drake's version because she may not have explicitly laid it out, but she at least implicitly rejected his version because she found that no reasonable observer could find that a violation of the agency's policy against intoxication had occurred. That's a factual finding, and the court can't go beyond the substantial evidence standard and review this de novo. This was, as the administrative judge I think basically found, this is a normal government office party. Casey Smith, one of the resident agents in charge, did testify and said he had been to 20 of these parties in his career at embassies. The issue isn't whether these parties are illegal. The issue is whether at a particular pair of parties people got drunk or not. If they got drunk or appeared to be drunk, maybe there's a reasonable belief. Or if there wasn't a reasonable belief, then that changed the outcome. Whether these parties are common or whether they're proper is not before us. Well, I agree, Your Honor, but I just think we have to place this in the bigger context. There isn't a policy against drinking at a party during work hours. There's a policy against intoxication, which Mr. Drake conceded is evidenced by a loss of control. There's no evidence in the record to support that conclusion. We can't be bound by a layperson's opinion of what the aid manual condemns as intoxication. I don't care what Drake thinks intoxication is. That doesn't bind what we have to do. Well, no, Your Honor, but it's a good suggestion of what he thought. Who cares what he thinks? The State Department didn't adopt the no intoxication rule based on his definition of intoxication. Well, let me be clear. That definition of intoxication I'm telling you he conceded to is not some definition he made up or I made up. It's a definition that comes from Merriam's dictionary. It's a plain dictionary definition of intoxication. It's quoted in the transcript during his testimony. It's a common understanding of intoxication. And again, I think the problem, the difficulty here is that everybody has a sense of what they think intoxication is, but this isn't a de novo application of what I think is intoxication or the court thinks is intoxication to these events. It's the administrative judge found that based upon the reasonable person standard, nobody could have found that these events described were intoxicated and substantial evidence supports that finding. Thank you, Your Honor. Mr. Woodfield, two minutes on rebuttal. Thank you, Your Honor. Very briefly, the AHA's own decision is dispositive of this point at JA12F. Quote, the appellant did not explain how these activities caused him to believe that Allen and Lawton were intoxicated, and he admitted that the glasses in use were smaller than a normal shot glass. The appellant identified seven additional photographs of the parties that were not sent in the email. He testified that Lawton is laughing and pointing in one of them and that Lawton and Allen are laughing and telling jokes in another. He testified that Lawton is shown with her eyes glazed over. Phil Rieger, Deputy Chief of Mission Budapest Department State, is obviously hot because he's shown with his jacket off. Finally, the appellant testified that two other employees are shown drinking large cups of wine. I do not find that a disinterested observer with knowledge of these facts reasonably could conclude the employees were intoxicated. Laughing, talking loudly, telling jokes, drinking liquor from a small glass, drinking wine from a large cup, saying woo-hoo and taking one's jacket off are all behaviors that an intoxicated individual might engage in. But they are also behaviors that an enthusiastic partygoer who is not intoxicated might engage in. The picture of Ms. Lawton with her eyes allegedly glazed over is not evidence that her facial expression is due to intoxication. Because the appellant provided no testimony that would show the behavior he observed were caused by alcohol intoxication and not by normal party behavior, I find that a disinterested observer could not reasonably conclude that his disclosure evidenced a violation of 3 FAM 4542. What she said is, you've got something that could be a violation, something that might not be a violation, because he hasn't demonstrated that it might not be a violation, I'm fine. That is exactly contrary to the finding or the holding in LaChance at 1381 where this court said, we conclude therefore that the proper test is, could a disinterested observer with the knowledge of the essential facts known to and regularly ascertainable by the employee conclude that the actions of the government evidence gross mismanagement? Thank you. Take the case under advice.